ZEGERS, INC., Plaintiff-Appellee,

v.

Edward A. ZEGERS, d/b/a Precision Weatherstrip Co., Defendant-Appellant.

No. 13310.

United States Court of Appeals Seventh Circuit.

Feb. 27, 1962.

Rehearing Denied March 30, 1962.

Certiorari Denied May 21, 1962.

See 82 S.Ct. 1163.

Daniel V. O'Keeffe, Junius F. Cook, Jr., Marzall, Johnston, Cook & Root, Chicago, Ill., for appellant.

Thomas F. McWilliams, Mann, Brown & McWilliams, Chicago, Ill., for appellee.

Before KNOCH, CASTLE and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff-appellee, Zegers, Inc., brought action in the United States District Court against defendant-appellant, Edward A. Zegers, doing business as Precision Weatherstrip Co., for infringement of its United States Letters Patent No. 2,-869,184.

Defendant, Edward Zegers, is a brother of Henry Zegers (who was the principal owner of Zegers, Inc., until his death shortly before the trial in the District Court) and of Raymond Zegers, manufacturer's representative for Zegers, Inc., since May, 1953, and before that, manager of its installation department. Edward Zegers, formerly sales manager of Zegers, Inc., left it in 1955 when he organized Precision Weatherstrip Co., and entered into competition with plaintiff.

The District Judge found Claims Nos. 1, 2, 3, 4, 5 and 7 of the patent in suit to be valid and infringed, decreed injunction, and referred the matter to a master to ascertain the damages sustained by plaintiff. This appeal followed.

The patent in suit is entitled "Clip for Combination Weatherstrip and Sash Balance." The subject matter relates to a combination sash balance and weatherstrip unit with clips to releasably secure sash balance and weatherstrip units in place in a window frame unit. The clip is a flat piece of metal, with hook ends. Four clips, attached to a window frame or jamb, one each at top and bottom on each side, hold a conventional combination sash balance and weather-

strip unit removably in place. The combination unit, with its extending side edges, is flexed about its longitudinal axis to reduce the overall width of the unit to permit it to be placed flat against the frame behind the hook portions of the clip, or to be removed from them, by similar flexing. The clips may be nailed or stapled in place.

The District Judge found that it has become the general custom of millwork companies to deliver window units, complete with weatherstripping, to a job site. Prior to the invention of the patent in suit, these units were nailed into place. Thus there was no convenient way to remove the unit during painting, plastering or reglazing operations. Paint, plaster or varnish falling on the metal weatherstrip hindered its operation. When the units were nailed into place, removal required the use of tools and frequently damaged the light gauge metal unit. These problems, in existence for many years, have been solved by the invention of the devices disclosed by the patent in suit, a large number of which have been sold.

After plaintiff's introduction of its commercial embodiment of the patent in suit, in March, 1957, defendant Edward Zegers began sale of a substantially identical clip. Later he made and sold an alternative which functions in the same manner. The District Judge found that both infringed the claims listed above.

Defendant Edward Zegers contends that the patent in suit is invalid and not infringed; that removable clipping of weatherstripping in position of use in a window frame is taught by the prior art. He also asserts that the patent in suit is invalid because the patent application was filed and permitted to issue in the name of plaintiff's assignor, William H. Zegers, as sole inventor, rather than in the names of William H. Zegers and Raymond V. Zegers as joint inventors. Defendant also argues that plaintiff has come into court with unclean hands having misused its patent. It is also defendant's position that the District Court erred in denying defendant's mo-

tion for a partial new trial, after remand by this Court subsequent to the filing of this appeal.

Defendant introduced a number of patents at the trial which, defendant contends, established anticipation or lack of invention. Some of these were not before the Patent Office when the patent in suit was issued. Many of these patents describe clips from nonrelated arts, such as those used for pots and pans. Others show that combination sash balance and weatherstrip units existed independently in the art. These constituted no better prior art than the patent references which were before the Patent Office, which showed independently existing clips from nonrelated arts and independently existing combination sash balance and weatherstrip units. The record shows no instance of a patent teaching removability of sash balance weatherstrips through flexing the combination to remove it from a hooked clip.

Two of the patents on which defendant relies are Starck Patent No. 2,307,-647 and Plym Patent No. 1,959,643. Defendant asserts that Starck and Plym disclose a window structure embodying all of the elements of the patent in suit. Starck shows a channel fixed to a window jamb, which holds a spring and weatherstrip member. The latter can be removed, leaving in place the channel which extends the full length of the sash. Plym relates to removable window units for an automobile, with a retaining channel secured in the door frame, which remains in place when the window is removed. The patent itself calls for the use of a screw driver, or similar instrument to be inserted to pry the members apart.

These are not unlike the nailed-in-place units of the prior art. Defendant sees a similarity in the teaching of these two patents to the patent in suit because in the patent in suit, the clip remains in place. Defendant overlooks the fact that when the window is removed in the Starck and Plym devices, one still has the problem of keeping the fixed channel free of paint and plaster to ensure op-

eration of the unit when the window is replaced.

A third patent on which defendant places great reliance is Conlon Patent No. 2,219,382, which does disclose a clip for securing weatherstripping to an automobile door, but once the Conlon clip is in place, the weatherstripping cannot be readily removed.

At the trial, defendant's expert witness designated Adams Patent No. 2,303,418 as the best reference. There, too, weatherstripping having a double flange or insertion in a saw slot in wood, can be removed from the slots only with substantial difficulty.

The fact that clips existed independently in nonrelated arts for many years supports the conclusion that the combination of the clip with hook ends and a combination sash balance and weatherstrip unit was not an obvious combination.

■ Study of the record before us indicates that the District Judge determined the status of the prior art at the time of the invention, the improvement made by the patentee, the problems existing in the industry, and their solution by the invention. The evidence fully supports his findings, and there is no basis for a conclusion that proper standards of invention were not applied. Armour & Co. v. Wilson & Co., 7 Cir., 1960, 274 F.2d 143, 150 et seq.; Binks Mfg. Co. v. Ransburg, 7 Cir., 1960, 281 F.2d 252, 254–255.

In Weller Mfg. Co. v. Wen Products, Inc., 7 Cir., 1956, 231 F.2d 795, this Court said:

> " * * * a novel combination of old elements which so cooperate with each other * * * to produce a new and useful result or a substantial increase in efficiency, is patentable." [231 F.2d 798 and other cases there cited]

See also McKee Door Co. v. Forest Door Co., 7 Cir., 1960, 284 F.2d 809, and Minneapolis-Honeywell Regulator Co. v. Midwestern Instruments, Inc, 7 Cir., 1961, 298 F.2d 36. A problem existed in the industry for years. It was not solved prior to the invention disclosed by the patent in suit.

Defendant asserts here that the judgment of infringement improperly includes items which are staple articles of commerce capable of substantial non-infringing use, i. e., combination sash balance and weatherstrip units. The judgment reads:

> "3. That Defendant has infringed Claims 1, 2, 3, 4, 5 and 7 by the sale of its Seal-Eaz and Alcote combination sash balance and weatherstrip units *with jamb clips* of its first and second forms (Plaintiff's Exhibits 23 and 24).

> "4. That a perpetual injunction issue restraining Defendant from the further sale of *clips* of the kind exemplified by Plaintiff's Exhibits 23 and 24 *for use with combination sash balance and weatherstrip units,* and from otherwise engaging in any activities in infringement of United States Letters Patent No. 2,869,184." [emphasis added]

We cannot agree that defendant has been enjoined against selling sash balance and weatherstrip units without clips. Defendant states that 82% to 84% of his weatherstrip units are sold without clips.

■ The testimony indicates that application for the patent in suit was initially prepared in the name of Raymond Zegers; that after consideration of the facts in the light of advice of patent counsel, it was determined that Raymond Zegers had urged the need for ready removability and had suggested one method which involved use of nails, but which had proved unsuccessful; that William H. Zegers had independently conceived the device shown in the patent application. Raymond Zegers himself was one of the witnesses who testified to that effect at the trial. Application was therefore made in William H. Zegers' name. The evidence supported the Trial Judge's finding that William H. Zegers was the actual inventor. There was no showing of a joint invention.

The District Judge found that defendant failed to establish any evidence that plaintiff violated the anti-trust laws or otherwise misused its patent. Defendant's counterclaim was accordingly dismissed. Defendant relied principally on a letter sent by plaintiff to defendant which charged that defendant was infringing plaintiff's patent by sales of his "weatherstrip * * * Seal-Eaz" and his "modified weatherstrip * * * Alcote." Defendant's own letters and accompanying literature describing the accused devices show that his "Seal-Eaz" and "Alcote" were being promoted for sale with clips.

Shortly after this appeal was docketed with this Court, defendant's petition was granted to remand the cause to the District Court to allow defendant to file a motion for a new trial on the basis of newly discovered evidence. This evidence concerned sales and shipments by plaintiff of combination weatherstrip and sash balance units and other window equipment, without clips, in containers marked with notice of the patent in suit. After hearing argument, the District Judge denied defendant's motion for a partial new trial.

■ Defendant asserts that the basis for remand to secure hearing on newly discovered evidence is (1) due diligence in efforts to secure such evidence, and (2) the convincing quality of the newly discovered evidence. Chicago and W. I. R. Co. v. Chicago & E. R. Co., 7 Cir., 1944, 140 F.2d 130, 131–132. Defendant therefore concludes that this Court by remanding the cause must have considered that a new trial was justified. Plaintiff did not contest defendant's diligence. The District Court scheduled a hearing on defendant's motion. After consideration of the affidavits, briefs, and argument, the District Judge found that the plaintiff had shipped some of its products which were not covered by the patent in suit, in cartons bearing the patent number. He determined that this was the result of error in selection of cartons in plaintiff's shipping department; that, on notification of the errors, plaintiff took immediate steps to ensure that the patent number was removed from all cartons leaving its factory; and that no intent to deceive or resulting damage was shown. Under these circumstances we cannot rule that denial of defendant's motion for partial new trial constituted an abuse of the District Court's discretion. This Court remanded the cause to the District Court solely for the purpose of granting the defendant leave to file a motion for a new trial. This Court did not order a new trial.

We have carefully considered all other points and authorities raised by defendant, but have found them lacking in merit. The judgment of the District Court is affirmed.